Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARIA RYDBERG,<br><br>    Plaintiff,<br><br>    v.<br><br>ORTHO CLINICAL DIAGNOSTICS HOLDINGS PLC, CHRIS SMITH, KAREN H. BECHTEL, EVELYN DILSAVER, ALLAN HOLT, CARL HULL, RON LABRUM, THOMAS MAC MAHON, DAVID PEREZ, ROBERT R. SCHMIDT, STEPHEN H. WISE, and ROBERT YATES,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Maria Rydberg ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Ortho Clinical Diagnostics Holdings plc ("Ortho" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Ortho by Quidel Corporation ("Quidel").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Ortho common stock.

7.      Defendant Ortho engages in the vitro diagnostics business worldwide. The Company is incorporated in England and Wales. The Company's common stock trades on the NASDAQ under the ticker symbol, "OCDX."

8.      Defendant Chris Smith ("Smith") is Chief Executive Officer and Chairman of the Board of the Company.

9.      Defendant Karen H. Bechtel ("Bechtel") is a director of the Company.

10.     Defendant Evelyn Dilsaver ("Dilsaver") is a director of the Company.

11.     Defendant Allan Holt ("Holt") is a director of the Company.

12.     Defendant Carl Hull ("Hull") is a director of the Company.

13.     Defendant Ron Labrum ("Labrum") is a director of the Company.

14.     Defendant Thomas Mac Mahon ("Mahon") is a director of the Company.

15.     Defendant David Perez ("Perez") is a director of the Company.

16.     Defendant Robert R. Schmidt ("Schmidt") is a director of the Company.

17.     Defendant Stephen H. Wise ("Wise") is a director of the Company.

18.     Defendant Robert Yates ("Yates") is a director of the Company.

19.     Defendants Smith, Bechtel, Dilsaver, Holt, Hull, Labrum, Mahon, Perez, Schmidt, Wise, and Yates are collectively referred to herein as the "Individual Defendants."

20.     Defendants Ortho and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

21.     On December 23, 2021, Ortho and Quidel announced that they had entered into a definitive agreement in which Quidel would acquire Ortho for $24.68 per share of common stock

3

using a combination of cash and newly issued shares in the combined company. The press release

announcing the Proposed Transaction states, in pertinent part:

### Quidel Corporation Signs Definitive Agreement to Acquire Ortho Clinical Diagnostics

*Strategic, transformational acquisition advances Quidel's global leadership in diagnostics*

**Transaction Highlights**
- Brings together highly complementary diagnostic portfolios with world-class technologies and platforms spanning high-throughput systems to near-patient and at-home testing.
- Provides Quidel's expansive point-of-care diagnostics portfolio with access to Ortho's broad global reach across 130-plus countries, accelerating growth for Quidel's existing product portfolio and providing exposure to new, emerging markets.
- Deepens innovation pipeline, diversifies product portfolio, and accelerates product growth, driving sustainable revenue in a combined total addressable market of $50 billion.
- Increases financial flexibility with combined estimated cost synergies of $90 million by end of year three, and revenue synergies in excess of $100 million by 2025, as well as opportunities for adjusted EBITDA margin expansion, supporting enhanced cash generation.

December 23, 2021 07:00 AM Eastern Standard Time

SAN DIEGO & RARITAN, N.J.--(BUSINESS WIRE)--Quidel Corporation (NASDAQ: QDEL) ("Quidel") and Ortho Clinical Diagnostics Holdings plc (NASDAQ: OCDX) ("Ortho") today announced that they have entered into a definitive agreement in which Quidel will acquire Ortho, one of the world's largest in vitro diagnostics companies, for $24.68 per share of common stock using a combination of cash and newly issued shares in the combined company, representing a 25% premium over Ortho's closing price on December 22, 2021 and an equity value of approximately $6.0 billion. The transaction is expected to close during the first half of fiscal year 2022, subject to customary closing conditions.

*       *       *

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, Quidel will acquire Ortho for $24.68 per share of common stock, for a total consideration of approximately $6.0 billion, including $1.75 billion of cash, funded through cash on the balance sheet and incremental

borrowings. The combined company will also acquire Ortho's existing net debt of $2.0 billion.

Ortho shareholders will receive $7.14 in cash per common share and 0.1055 shares of common stock in the combined company for each Ortho common share, with Ortho shareholders expected to own approximately 38% of the combined company. This represents an implied premium of 25% when compared to Ortho's unaffected closing stock price on December 22, 2021.

Following the close of the transaction, the combined company's Board of Directors will consist of 12 members, eight (8) designated by Quidel and four (4) designated by Ortho. Quidel's current President and Chief Executive Officer, Douglas Bryant, will serve as Chairman and Chief Executive Officer of the combined company. Joseph M. Busky will be the Chief Financial Officer, Robert Bujarski will be President and Chief Operating Officer, and Michael Iskra will be Chief Commercial Officer.

The transaction, which is subject to approval by both companies' shareholders as well as customary closing conditions and regulatory approvals, is expected to close in the first half of 2022.

**Advisors**

Quidel's financial advisors in connection with this acquisition are Perella Weinberg Partners LP and Citi, and its legal advisor is Gibson, Dunn & Crutcher LLP.

Ortho's exclusive financial advisor is J.P. Morgan Securities LLC, and its legal advisor is Latham & Watkins LLP.

\*       \*       \*

**About Quidel Corporation**

Quidel Corporation (Nasdaq: QDEL) is a leading manufacturer of diagnostic solutions at the point of care, delivering a continuum of rapid testing technologies that further improve the quality of health care throughout the globe. An innovator for over 40 years in the medical device industry, Quidel pioneered the first FDA-cleared point-of-care test for influenza in 1999 and was the first to market a rapid SARS-CoV-2 antigen test in the U.S. Under trusted brand names Sofia®, Solana®, Lyra®, Triage® and QuickVue®, Quidel's comprehensive product portfolio includes tests for a wide range of infectious diseases, cardiac and autoimmune biomarkers, as well as a host of products to detect COVID-19. With products made in America, Quidel's mission is to provide patients with immediate and frequent access to highly accurate, affordable testing for the good of our families, our communities and the world. For more information about Quidel, visit quidel.com.

View our story told by our people at www.quidel.com/ourstory.

**About Ortho Clinical Diagnostics**
Ortho Clinical Diagnostics (Nasdaq: OCDX) is one of the world's largest pure-play in vitro diagnostics (IVD) companies dedicated to transforming patient care.

More than 800,000 patients across the world are impacted by Ortho's tests each day. Because Every Test Is A Life™, Ortho provides hospitals, hospital networks, clinical laboratories and blood banks around the world with innovative technology and tools to ensure test results are fast, accurate and reliable. Ortho's customized solutions enhance clinical outcomes, improve efficiency, overcome lab staffing challenges and reduce costs.

From launching the first product to determine Rh+ or Rh- blood type, developing the world's first tests for the detection of antibodies against HIV and hepatitis C, introducing patented dry-slide technology, and marketing the first U.S. Food and Drug Administration-authorized high-volume antibody and antigen tests for COVID-19, Ortho has been a pioneering leader in the IVD space for over 80 years. The company is powered by Ortho Care® Service and Support, an award-winning, holistic program that ensures best-in-class technical, field, and remote service and inventory support to laboratories in more than 130 countries and territories around the globe.

22.     On January 31, 2022, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B.  The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Registration Statement, which recommends that Ortho shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Ortho's, Quidel's, and the combined company's financial projections; (ii) the financial analyses performed by Ortho's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in connection with its fairness opinion; (iii) potential conflicts of interest involving J.P. Morgan; and (iv) potential conflicts of interest involving Company insiders.

24.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Ortho Reasons for

6

the Combinations and Recommendation of the Ortho Board of Directors; (ii) Unaudited Forward-Looking Financial Information; and (iii) Opinion of J.P. Morgan Securities LLC as Financial Advisor to Ortho.

25.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Ortho shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning Ortho's, Quidel's, and the Combined Company's Financial Projections**

26.     The Registration Statement omits material information concerning Ortho's, Quidel's, and the combined company's financial projections.

27.     With respect to the "*Ortho Unaudited Forward-Looking Financial Information*," the Registration Statement fails to disclose: (1) all line items underlying each set of projections; (2) Ortho's and Quidel's respective net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28.     With respect to the "*Quidel Unaudited Forward-Looking Financial Information*," the Registration Statement fails to disclose: (1) all line items underlying each set of projections; (2) Ortho's and Quidel's respective net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

29.     With respect to the "*Unaudited Pro Forma Synergy Estimates for Topco*," the Registration Statement fails to disclose: (1) all line items underlying each set of projections; (2) the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

30.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Ortho and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

32.     The above-referenced omitted information, if disclosed, would significantly alter

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 10, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning J.P. Morgan's Analyses

33.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by J.P. Morgan.

34.     With respect to J.P. Morgan's "*Public Trading Multiples*" analysis, the Registration Statement fails to disclose the individual financial metrics of each company J.P. Morgan observed in its analysis, including each company's firm value and consensus equity research analyst estimates for each company's adjusted earnings before interest, taxes, depreciation and amortization post-stock based compensation for the year ending December 31, 2022.

35.     The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) the range of terminal values of Ortho and Quidel; (2) the individual inputs and assumptions underlying the (i) perpetual growth rates ranging from 2.0% to 3.0%, and (ii) discount rates ranging from 6.5% to 7.5% for Ortho, and 7.5% to 8.5% for Quidel; and (3) the net debt for each of Ortho and Quidel as of December 31, 2021.

36.     The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

37.     Without the information described above, the Company's shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3.   Material Omissions Concerning Potential Conflicts of Interest Involving J.P. Morgan**

38.    The Registration Statement omits material information concerning potential conflicts of interest involving J.P. Morgan.

39.    The Registration Statement provides that "Ortho has agreed to pay J.P. Morgan a fee of up to $50 million (but not less than $40 million), $3 million of which became payable to J.P. Morgan at the time J.P. Morgan delivered its opinion and the remainder of which is contingent and payable upon the consummation of the Combinations." The Registration Statement, however, fails to disclose the circumstances under which J.P. Morgan may receive "a fee of up to $50 million" or at least $40 million, and the specific amount of compensation that the Company intends to pay J.P. Morgan in connection with its engagement.

40.    Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41.    The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**4.   Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

42.    The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

43.    The Registration Statement provides the following concerning the composition of the board and management of the combined company following the consummation of the Proposed

Transaction:

**Topco Positions**

The post-closing Topco board of directors will consist of 12 members, comprised of: (i) four members designated by Ortho, two of whom will qualify as an "independent director" under applicable rules of Nasdaq, and (ii) eight members designated by Quidel, four of whom will qualify as an "independent director" under applicable rules of Nasdaq.

Douglas Bryant, the current President and Chief Executive Officer of Quidel, will be the Chief Executive Officer of Topco and Chair of the Topco board of directors. Additionally, Robert Bujarski, the current Chief Operating Officer of Quidel, will serve as the President and Chief Operating Officer of Topco. The chairperson of each of the Audit Committee, the Nominating and Governance Committee and the Compensation Committee shall be selected from among the eight directors designated by Quidel and each of the committees of the Topco board of directors will consist of one director designated by Ortho (who is reasonably acceptable to the Topco board of directors) and not less than two additional directors designated by Quidel.

Joseph Busky, the current Chief Financial Officer of Ortho, will serve as the Chief Financial Officer of Topco. Additionally, Michael Iskra, the current Executive Vice President of Commercial Excellence and Strategy at Ortho, will serve as the Chief Commercial Officer of Topco.

44.     The Registration Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

45.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

46.     The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

50.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

57. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 10, 2022                         Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*